**MARTIN et al. v. BONNETTE. \***

No. 4432.

Court of Appeal of Louisiana,
Second Circuit.

Feb. 6, 1933.

John A. Williams and James H. Williams, both of Colfax, for appellant.

Cook & Cook, of Shreveport, and Clair H. McCain, of Colfax, for appellees.

TALIAFERRO, J.

Plaintiffs, the widow and heirs of G. H. Martin, deceased, seek, by this suit, to foreclose by ordinary process, a mortgage and vendor's lien granted by defendant on land in Grant parish, to secure payment of the two last maturing notes of a series of six, for $105.74 each, dated November 17, 1924, and maturing 20 and 24 months from date, respectively. The first four notes of the series were paid by defendant; three before Mr. Martin's death, and one subsequently.

Defendant admits execution and delivery to G. H. Martin of the notes sued on, representing part of the purchase price of land he bought from Martin on November 17, 1924, but pleads payment of the notes in full prior to Martin's death, and while he was the holder and owner of same. He avers that he and the deceased made a contract pursuant to which he, defendant, was authorized and empowered to cut, remove, and market all of the merchantable timber from the land aforesaid, and that defendant was entitled to and would be paid 10 per cent. of the value of said timber for his services, and that timber was cut from said land and sold by him for a total sum of $3,550, of which amount he was entitled to $355, which should have been credited on his notes. He also pleads that he discovered that the title to his land was defective, and that Martin, in keeping with his obligations as warrantor, authorized defendant to cure the defects in said title, and that the expense of this would be credited on his notes; that he paid $75 for legal and other assistance in perfecting said title and curing defects therein, and incurred other expenses amounting to $24. He alleges that the deceased was due him for commission and expenses, etc., in curing defects in the title to his land, the sum of $449, which should have been credited on the notes, and which would have left a balance due him on that account. He avers that he had no final settlement with G. H. Martin, but no demand was ever made on him for payment of the last two notes, for the reason that they had been paid in full and discharged by credits due him arising from the above-named transactions. He prays that plaintiffs take nothing by this suit; that the notes sued on be adjudged to have been paid; and that he have judgment in reconvention for $449 against plaintiffs, less the amount of the notes.

There was judgment in the lower court in favor of plaintiffs, in rem, as prayed for. Defendant has appealed.

■ This is the second time this case has been before this court. See Martin et al. v. Bonnette, 19 La. App. 521, 139 So. 507. We remanded the case heretofore for the purpose of giving defendant opportunity to introduce evidence in support of his plea of payment,

which had been excluded by the trial court. The case is now before us after new trial in the court a quo. The only question involved now is that presented by the plea of payment. Defendant carried the burden of establishing this plea. We do not think he has done so.

 Defendant's own evidence and letters to G. H. Martin are all we need to consider in resolving this case against him. He testified that the commissions Martin was to pay him for selling his timber were to be imputed to the payment of the last notes due. He paid four notes of $105.74 each. He claims commissions of $355 due him. Therefore, according to his version of the matter, he paid at least one note when he knew his credits from commissions were amply sufficient to have extinguished it. He also testified that he expended $99 for an abstract of title to his land and for expenses incidental to some curative work on the title, and that Mr. Martin agreed to bear this expense and give credit therefor on the notes. We are convinced the abstract was necessary in connection with defendant's application to a loan company to effect a loan against this property, and that in trying to secure the loan he was prompted primarily by the desire to pay Mr. Martin the balance due him. Defendant, in his letter to Mr. Martin, April 17, 1927, states that, "My abstract will cost me $75.00," and further says, "As soon as I can get the loan through I will get your money." A loan on the land could not be closed until the Martin mortgage was canceled. This defendant intended to effect from the proceeds of the loan. He does not seriously deny this was his intention; yet he now contends these very notes the contemplated loan was to extinguish were at that time already extinguished in the manner set out in his answer.

Defendant testified that the agreement with Mr. Martin was made about six months prior to execution of the deed November 17, 1924, and that he had not to that time logged any of the timber from the land, and that at that date he had not earned any of the commissions he now asserts credit for. When confronted with a letter written by him to Mr. Martin on April 3, 1923, wherein he inclosed a check for stumpage cut from the land afterwards sold him by Martin, his shifting, and the absurdity of his evidence, may best be appreciated from a part of his testimony:

"Q. You wrote that letter to Mr. Martin? A. Yes, it was in '23 in place of '25, though.

"Q. You just testified that you had not done any logging whatever when these notes were executed? A. I hadn't finished.

"Q. You said you hadn't done any; and therefore no credit had accrued to you? A. I believe that is what I said. I know we hadn't finished that logging and if I remember right we hadn't made any trade, if I remember correctly.

"Q. Any trade for what? A. We hadn't made any settlement.

"Q. You testified just now at the time that you executed these notes on November 17th, 1924, at that time you hadn't done any logging and had no credit accrued, isn't that what you said? A. Yes, but I was mistaken in the time.

"Q. Why were you mistaken in the time? A. I said the records would show the date, and it was about six months before this happened.

"Q. Why did you give your notes for this if a year and a half before you gave them you were already logging the Graham tract? A. I didn't have any settlement with Mr. Martin until after I had given the notes, after I had given the notes on this property. We never had had any settlement and I never have received ten per cent of anything, until the final windup.

"Q. Explain to the Court why you executed your notes for the full amount that they were executed for, when a year and a half before that you were logging the Graham tract? A. If my memory serves me right, which I think it does, we were logging on this piece of property after '25, and I know that I didn't wind it up.

"Q. You executed certain notes which you say have been paid by an obligation which you say Martin owed you one and one-half years before you executed the notes? A. No, he didn't owe it."

We have no hesitancy in concluding from the record that the merchantable timber had all been removed from the lands by defendant by November 17, 1924. Only one letter after that, of the many introduced in evidence, refers to any timber being cut, and that one mentions "scrap" stumpage on the Ethridge tract, which defendant does not appear to own. If defendant was selling the Martin timber for a commission, as he claims, we surmise that this took place before the deed was made to defendant, and that due credit was given at that time on the originally agreed upon purchase price. Defendant could not satisfactorily explain why he would have given Martin his notes for all the purchase price, when, at the time, he had coming to him several hundred dollars as commission. He tried to meet this by saying the timber was cut and removed after date of the deed, but his own letters positively contradict him on this point.

The deed from Martin to defendant does not reserve the timber. Mr. Martin, the record discloses, was a business man of considerable experience in buying and selling land and timber. He would hardly have conveyed

land and reserved the timber without that fact being mentioned in the deed.

In explanation of his reason for not collecting the commissions due him as he sold the timber, defendant stated that the company that bought the timber paid Mr. Martin directly the stumpage price. In that he erred, for the record contains many of his letters to Mr. Martin, prior to November 17, 1924, wherein it is stated that checks were inclosed to pay for stumpage.

No mention of commissions due defendant is made in any of the correspondence between defendant and Mr. Martin; but there does appear in many of these letters the unqualified commitment by defendant that he owed the notes sued on; that he paid interest on all the notes that were unpaid, from time to time; that he paid one note after Mr. Martin's death, without protest, and without asserting that there was any offset against it; that after January, 1929, defendant made Martin a deed to one-half interest in the mineral rights in the land in satisfaction of the interest to February 17, 1929, on the last four notes maturing.

There are other facts in the record that go to disprove defendant's plea of payment; but those mentioned herein are sufficient to sustain the finding of the lower court that the notes sued on have not been paid.

For the reasons assigned, the judgment appealed from is affirmed.